THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNIÓN DE EMPLEADOS DE MUELLES DE PUERTO RICO PRSSA WELFARE PLAN, et al.,**<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO, et al.,**<br><br>    **Defendants,**<br><br>    v.<br><br>**PUERTO RICO FIXED INCOME FUND II, INC., et al.,**<br><br>    **Nominal Defendants.** | **Civil No. 10-1141 (ADC)** |

## OPINION AND ORDER

Currently pending before the Court are two motions whose subject matter is inexorably intertwined. In one motion, UBS Financial Services Incorporated of Puerto Rico, UBS Trust Company of Puerto Rico ("UBS Trust," together, "UBS defendants"), Miguel A. Ferrer ("Ferrer"), Carlos V. Ubiñas ("Ubiñas"), Stephen C. Roussin ("Roussin"), Leslie Highley, Jr. ("Highley"), Mario S. Belaval, Agustín Cabrer-Roig, Gabriel Dolagaray-Balado, Carlos Nido, Luis M. Pellot-González, Vicente J. León, Clotilde Pérez (collectively, "defendants"); and Puerto Rico Fixed Income Fund II, Inc. ("Fund II"), Puerto Rico Fixed Income Fund III, Inc.("Fund III"), Puerto Rico Fixed Income Fund IV, Inc.("Fund IV"), and Tax-Free Puerto Rico Fund II, Inc. ( the "Tax-Free Fund," collectively, "the Funds" or "nominal defendants") request dismissal of the Complaint for lack of subject matter jurisdiction, alleging that Unión de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan ("PRSSA") and Unión de Empleados de Muelles de Puerto Rico AP Welfare Plan ("AP", together, "plaintiffs") lost standing when they sold their shares in the Funds. **ECF No. 81**. In the other motion, Wilmer Rodríguez-Silva, Luis Colón-Rivera, Jesús Norniella, the Norniella Family Trust, Humberto

Donato and Amelia Solis (collectively, "putative intervenors"), represented by the same attorneys as plaintiffs, request that the Court allow them to intervene in order to correct any standing issues raised by plaintiffs' sale of their shares in the Funds.[1] **ECF No. 80**. Oppositions and replies were filed in response to both motions. **ECF Nos. 88, 92, 96, 97**.

## I. Procedural History

On February 19, 2010, plaintiffs filed their Complaint, alleging shareholder derivative claims for violations of section 10(b) of the 1934 Securities Exchange Act ("the Exchange Act"), 15 U.S.C. §78j(b), SEC Rule 10b-5, 17 C.F.R. §240.10b-5 and section 20(a) of the Exchange Act, 15 U.S.C. §78t(a); section 12(a)(2) of the Securities Act of 1933 ("the Securities Act"); and section 502 of the Employee Retirement Income System Act of 1974 ("ERISA"), 29 U.S.C. §1132(e) *et seq.*;[2] as well as related Commonwealth law claims brought pursuant to the Court's supplemental jurisdiction. **ECF No. 1**. On May 25, 2010, defendants and nominal defendants moved to dismiss plaintiffs' Complaint. **ECF No. 35**.

Subsequently, the Court entered its Opinion and Order granting the motion to dismiss and dismissing the Complaint without prejudice. **ECF No. 57**. First, the Court dismissed PRSSA's derivative claims brought on behalf of the Tax-Free Fund as PRSSA was not a stockholder during the relevant time-period. *Id.* Moreover, finding that plaintiffs failed to sufficiently plead demand futility, the Court dismissed all plaintiffs' derivative claims. *Id.* Next, the Court found that plaintiffs failed to state claims for which relief could be granted as to their class claim of breach of ERISA fiduciary duties and violations of the UBS defendants' duty to act in good faith. *Id.* Having thus disposed of all substantive claims, the Court dismissed plaintiffs' "supplemental claim" for attorneys' fees, costs, and pre- and post-

---

[1] Plaintiffs do not concede, however, that they indeed lost their standing to pursue their claims against defendants when they sold their shares in the Funds.

[2] Unlike the claims arising from violations of the Exchange Act, the Securities Act and most Commonwealth-law based claims, plaintiffs styled their claim for breach of ERISA fiduciary duties and the related Commonwealth law-based claim for violation of the duty to act in good faith as class claims, rather than as derivative claims. **ECF No. 1**.

judgment interest. *Id.*

Plaintiffs appealed the Court's decision and, on January 4, 2013, the First Circuit Court of Appeals vacated the portion of the Court's Opinion and Order dismissing plaintiffs' derivative claims for failure to properly plead demand futility. **ECF No. 69**. The First Circuit thus remanded the case to the district court for further proceedings as to plaintiffs' derivative claims.[3] *Id.* Consequently, the only claims before the Court at this time are: (1) Count I, which is a derivative claim against the UBS defendants for violation of section 10(b) of the Exchange Act and Rule 10b-5; (2) Count II, which is a derivative claim against Ferrer, Ubiñas, Roussin and Highley for violation of section 20(a) of the Exchange Act; (3) Count III, which is a derivative claim against the UBS defendants for violation of section 12(a)(2) of the Securities Act; and (4) Counts V, VII, VIII, IX and X, which are various derivative claims under Commonwealth law brought pursuant to the Court's supplemental jurisdiction. *See* **ECF Nos. 1, 69**.

On February 20, 2013, within days of receiving the First Circuit's Mandate, the parties filed the currently-pending motion to dismiss for lack of standing and related motion to intervene. *See* **ECF Nos. 80, 81**.

## II. Motion to Dismiss for Lack of Standing

The Court must address defendants' motion to dismiss prior to addressing the other pending motion as standing is a threshold inquiry. *See Salazar v. Buono*, 559 U.S. 700 (2010); *Berner v. Delahanty*, 129 F.3d 20, 23 (1st Cir. 1997). It bears directly on the Court's ability to adjudicate a dispute brought before it; if plaintiffs lack standing, the Court's inquiry into the merits of the case should go no further. *See United Seniors Ass'n, Inc. v. Phillip Morris USA*, 500 F.3d 19, 23 (1st Cir. 2007) ("Federal courts are required to determine whether Article III jurisdiction exists prior to proceeding to the merits of the case.") When evaluating a motion to dismiss for lack of jurisdiction, including lack of standing, it "is to be presumed that a cause

---

[3] The dismissal of plaintiffs' putative class claims for breach of ERISA fiduciary duties and violations of the duty of good faith were not challenged on appeal. *See* **ECF No. 69**.

lies outside [the Court's jurisdiction] . . . and the burden of establishing the contrary rests upon [the plaintiff]." *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

Here, defendants move to dismiss plaintiffs' Complaint because plaintiffs sold their shares in the Funds during the pendency of the appeal in this case. **ECF Nos. 81, 87**. Defendants argue that plaintiffs lost standing at the time when they sold their shares, thus depriving the Court of subject matter jurisdiction. **ECF No. 81**. Accordingly, defendants argue that since the Court lacks subject matter jurisdiction, the Court must dismiss this case without entertaining the pending motion to intervene. *Id.*

Plaintiffs counter that, although their sale of all shares in the Funds may have indeed deprived them of statutory derivative standing under Federal Rule of Civil Procedure 23.1 ("Federal Rule 23.1") or the analogous Commonwealth statute, it did not deprive the Court of subject matter jurisdiction. **ECF No. 92**. Plaintiffs argue that, because the cause of action in a shareholder derivative suit truly belongs to the corporation, the Court should allow putative intervenors to appear and correct any issues of standing created by plaintiffs' sale of the shares. *Id.*

### A.     Rule 12(b)(1) Standard

Challenges to standing constitute challenges to the Court's subject matter jurisdiction. *See United Seniors Ass'n*, 500 F.3d at 23. Accordingly, they must be addressed under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). *Valentín v. Hospital Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001). Rule 12(b)(1) motions are subject to the same standard of review as motions to dismiss for failure to state a claim brought under Federal Rule of Civil Procedure 12(b)(6). *See Negrón-Gaztambide v. Hernández-Torres*, 35 F.3d 25, 27 (1st Cir. 1994). Thus, the Court construes the Complaint liberally, accepting as true all well-pleaded factual allegations, indulging all reasonable inferences in the plaintiffs' favor. *Viquiera v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998). Additionally, the Court may review extra-pleading material, including affidavits when considering a Rule 12(b)(1) motion. *González v. United States*, 284 F.3d 281, 288 (1st Cir. 2002); *see also Díaz-Romero v. Ashcroft*, 472 F. Supp. 2d 156, 160 (D.P.R. 2007); *Lorenzo-

*Font v. Francisco*, 260 F. Supp. 2d 394, 397 (D.P.R. 2003).

### B.     Factual Background

The following factual background, relevant to the Court's current inquiry, is derived from the Complaint and the First Circuit Court of Appeals' Opinion remanding the case, as well as from evidence submitted to supplement the motion to dismiss. **ECF Nos. 1, 69, 82, 80-3, 87**.

Plaintiffs are two Puerto Rico pension plans. **ECF Nos. 1** at ¶¶ 23-24, **69** at p. 3. At the time when plaintiffs filed their Complaint in this case, they owned shares in the Funds, which are closed-end investment funds advised by UBS Trust, a subsidiary of UBS AG. **ECF Nos. 1** at ¶¶ 8, 23-24, **69** at p. 3. In 2008, UBS Trust purchased approximately $757 million in bonds from a series of issuances underwritten by another UBS AG affiliate, selling the bonds to the Funds. **ECF No. 69** at p. 3. In their Complaint, plaintiffs asserted that the UBS defendants engaged in a scheme of manipulative trading, using the Funds to create the artificial appearance of market interest in the bonds, driving up their price. *Id.* at p. 8. Plaintiffs further allege that, because the Funds were so heavily invested in the bonds, they suffered significant losses when the bonds depreciated.[4] **ECF Nos. 1** at ¶ 9-12, **69** at pp. 3-4. From this factual predicate, plaintiffs assert claims under the Securities Act and the Exchange Act, along with supplemental Commonwealth claims. **ECF No. 1** at ¶¶ 140-202.

When they filed their Complaint, plaintiffs certified that they were stockholders in the Funds[5] at all material times and would continue to be stockholders through the conclusion of the litigation. **ECF No. 1.** at ¶¶ 23-24. Plaintiffs continued to hold their shares in the Funds

---

[4] Defendants' alleged actions and the economic consequences of those actions are outlined in detail in the Complaint. *See* **ECF No. 1**. However, these details do not figure in the Court's standing analysis.

[5] Plaintiffs were both stock holders of Funds II, III and IV. **ECF No. 1**. However, as already noted above, the Court dismissed PRSSA's claims on behalf of the Tax-Free Fund for failure to state a claim upon which relief could be granted. **ECF No. 57**. AP's claims on behalf of the Tax-Free fund remain. *See id.*

Civil No. 10-1141 (ADC) Page 6

into 2012. **ECF No. 80-3** at ¶¶ 2, 7. However, at some point during the pendency of the appeal, and unbeknownst to plaintiffs counsel,[6] plaintiffs sold their shares in the Funds. *Id.* at ¶¶ 3, 7. Plaintiffs realized profits for at least some of the transactions when they sold their shares in the Plans. **ECF No. 87-1**.

### C.   Shareholder Derivative Standing and the Continuing Ownership Rule

The Constitution strictly limits the power of the federal courts to "actual cases or controversies[,]" which are defined as situations where the plaintiff "demonstrates 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'" *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012) (citing U.S. Const. art. III, § 2, cl. 1 and quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). This requirement is referred to as standing. *See id.*

Standing "has two elements: an 'irreducible constitutional minimum,' and a prudential component." *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 637 (1st Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) and citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Standing demands that a plaintiff "have a personal stake in the outcome of the litigation." *Culhane v. Aurora Loan Svcs. of Nebraska*, 708 F.3d 282, 289 (1st Cir. 2013). Constitutional standing demands that a plaintiff make a three-part showing of injury: (1) that he or she has suffered an injury in fact; (2) that his or her injury was caused by the defendant's conduct; and (3) that his or her injury could be redressed were the Court to grant the relief

---

[6] Counsel's failure to communicate with their clients during the entire pendency of the appeal runs afoul of Model Rule of Professional Conduct 1.4. Although no monetary sanctions are imposed at this time, counsel are reprimanded and warned that such conduct in the future may lead to further sanctions, including monetary sanctions and the Court's refusal to grant counsels' requests for *pro hoc vice* appearances. Moreover, this failure to communicate with their clients, combined with counsels' subsequent scramble to locate and move for intervention on behalf of other shareholders, tends to indicate the type of lawyer-driven litigation generally disfavored in all federal fora. *See In re Boston Scientific Corp. Sec. Litig.*, 686 F.3d 21, 29-30 (1st Cir. 2012) (noting the problem of frivolous, lawyer-driven litigation); *Gandal v. Telemundo Group, Inc.*, 23 F.3d 539, 544 (D.C.Cir. 1994) (noting that the contemporaneous ownership rule might stem from concerns related to lawyer-driven suits).

Civil No. 10-1141 (ADC)                                                  Page 7

requested. *Lujan*, 504 U.S. at 560. Prudential standing "has various aspects, including a requirement that a party 'assert his own legal rights and interests,' not those of third parties."[7] *Gianfrancesco*, 712 F.3d at 637.

The claims remaining before the Court are all brought as shareholder derivative actions under the Exchange Act, the Securities Act[8] and Commonwealth state law. *See* **ECF Nos. 1, 69**.

It is unclear whether federal law, state law, or both determines who has standing to bring a shareholder derivative suit; indeed, most courts consider both Federal Rule 23.1 and the applicable state statute when addressing challenges to derivative standing. *See Lewis v. Knutson*, 699 F.3d 230, 238 (5th Cir. 1983) (citing both the Federal Rule and Delaware state jurisprudence); *Schilling v. Belcher*, 582 F.2d 995, 1002 (5th Cir. 1978) (applying only state law); *In re Merrill Lynch & Co. Sec. Deriv. and ERISA Litig.*, 597 F. Supp. 2d. 427, 431 (S.D.N.Y. 2009) (noting that standing "does not fit neatly into one or the other" but, ultimately, applying state law). Federal Rule 23.1,[9] like Delaware corporate law,[10] contains an implied continuous

---

[7] For example, the shareholder-standing rule, which allows shareholders to bring a claim where the corporation's management refuses to pursue the same action for a reason other than a good faith business judgment, is a prudential limitation on the Court's jurisdiction. *See Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990).

[8] Although these statutes do not directly authorize private suits, courts have routinely inferred a private right of action into the sections under which plaintiffs sue. *See Merrill Lynch Pierce v. Dabit*, 547 U.S. 71, 79-80 (2006) (discussing the bounds of the private right of action under section 10(b) and Rule 10b-5); *Janus Capital Grp. v. First Derivatives Traders*, 131 S.Ct. 2296, 2310 (2011) (outlining the theory of liability under section 20(a)); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 156 (2d Cir. 2012) (discussing liability under section 12(a)(2)). It is uncontested that nominal defendants, the corporations on whose behalf plaintiffs sue, meet the standing requirement that they be purchasers or sellers of securities in order to bring a private suit. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) (accepting the seller and purchaser limitation on standing).

[9] To further muddy the waters, courts treat Federal Rule 23.1's continuous ownership mandate as both a procedural rule and as a standing requirement. *See Halebian v. Berv,* 590 F.3d 195, 203-04 (2d Cir. 2009) (addressing Federal Rule 23.1 under Rule 12(b)(6) as a procedural pleading requirement that also implied substantive issues as to the powers of shareholders and the corporation, then addressed under state law); *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1290 (Fed.Cir.

ownership requirement which requires derivative plaintiffs to maintain ownership of their shares in the nominal defendant corporation throughout the pendency of the suit. *See In re Merrill Lynch & Co. Sec. Deriv. and ERISA Litig.*, 597 F. Supp. 2d. 427, 431 (S.D.N.Y. 2009) (noting the virtual identicality of Federal Rule 23.1 and the equivalent Delaware rule).

Standing to bring a derivative action "is justified only by the proprietary interest created by the stockholder relationship and the possible indirect benefits the nominal plaintiff may acquire *qua* stockholder of the corporation which is the real party in interest." *Schilling*, 582 F.2d at 1002 (quoting *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 735-36 (3rd Cir. 1970)). This justification underscores the purpose of the continuing ownership requirement. *Lewis*, 699 F.2d at 238. Specifically, the "obvious purpose of the continuous ownership rule is to ensure that the plaintiff prosecuting a derivative action has an economic interest aligned with that of the corporation and an incentive to maximize the corporation's value." *Parfi Holding AB v. Mirror Image Internet Inc.* 954 A.2d 911, 939 (Del. Ch. 2008); *see also Martínez v. Barasch*, No. 01-2289, 2004 WL 1555191, at *7-8 (S.D.N.Y. July 12, 2004). Thus, the continuous ownership requirement sets "an important, policy-based minimum" for shareholder derivative actions. *Id.*

Here, it is undisputed that plaintiffs sold their shares in the Funds during the pendency of the appeal. Thus, plaintiffs have failed to meet both Federal Rule 23.1 and Delaware's continuing ownership requirements. Accordingly, the Court finds that, at the very least, by selling their shares before final disposition of the case, plaintiffs lost prudential standing to pursue claims on behalf of the Plans, thus warranting dismissal of their Complaint. *See First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1290 (Fed.Cir. 1999); *Lewis*,

---

1990) ("The shareholder derivative standing requirements of Federal Rule of Civil Procedure 23.1 involve prudential limitations . . .").

[10] As noted by the First Circuit Court of Appeals, Puerto Rico corporate law is modeled on Delaware's regime; thus, the Court applies Delaware law where no Puerto Rico jurisprudence dictates a result. *See* **ECF No. 69** (citing *González-Turul v. Rogatol Distribs., Inc.*, 951 F.2d 1, 3 n.4 (1st Cir. 1991) and *Marquis Theatre Corp. v. Condado Mini Cinema*, 846 F.2d 86, 90-91 (1st Cir. 1982)).

699 F.3d at 238 (describing the continuous ownership requirement as prudential); *Martínez*, 2004 WL 1555191, at *7-8 (finding no standing applying an identical New York continuous ownership requirement); *Snyder v. Pleasant Valley Finishing Co., Inc.*, 756 F. Supp. 725, 730 (S.D.N.Y. 1990); *Werfel v. Kramarsky*, 61 F.R.D. 674, 679 (S.D.N.Y. 1974); *see also N.A. Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del. 1984) (finding under Delaware law that a plaintiff loses derivative standing due to a failure to meet the continuous ownership requirement even in the context of a merger); *Parfi*, 954 A.2d at 940 (finding under Delaware law that failure to meet the continuous ownership requirement results in loss of standing).

Moreover, numerous courts have found Article III implications in the continuous ownership rule as well.[11] *See Gollust v. Mendell*, 501 U.S. 115, 125 (1991) (noting that, "if a security holder were allowed to maintain a §16(b) [of the Exchange Act] action after he had lost any financial interest in its outcome, there would be serious constitutional doubt whether that plaintiff could demonstrate the standing required by Article III's case-or-controversy limitation on federal court jurisdiction."); *Kaislag v. Hartford Inv. Fin. Svcs., LLC*, No. 11-1083, 2012 WL 6568409, at *9 (quoting *Gollust* for the proposition that a derivative plaintiff must still maintain a personal stake in the outcome of the litigation to meet Article III's requirements); *Hill v. Vanderbilt Capital Advisors, LLC*, 834 F. Supp. 2d 1228, 1250 (D.N.M. 2011) (finding that, even where a plaintiff sues in a representative capacity, he or she must make "an independent showing of injury in fact, causation and redressability"); *In re Mercury Interactive Corp. Derivative Litig.*, 487 F. Supp. 2d 1132, 1139 (N.D. Cal. 2007) (finding that a plaintiff lacked Article III standing to pursue a claim under §16(b) of the Exchange Act because he sold his shares during the course of the litigation). As plaintiffs sold their shares in the Plans here, they have not retained any personal stake in the litigation. Accordingly, in addition to losing their prudential standing, they no longer have the Article III standing necessary to continue

---

[11] Where the continuous ownership rule is violated, many courts simply state that dismissal is warranted for lack of standing without specifying whether it is of the prudential or constitutional variety. *See e.g. SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, No. 12-1011, 2013 WL 1233544, at *9 (E.D.N.Y. March 27, 2013); *Kolancian v. Snowden*, 532 F. Supp. 2d 260, 262 (D.Mass. 2008).

the suit.[12]

Having determined that plaintiffs lack both prudential and constitutional standing here, the Court's inquiry would usually end and the case would be dismissed without reaching the merits. *See United Seniors Ass'n, Inc*, 500 F.3d at 23; *Lewis*, 690 F.2d at 238 ("[Plaintiff's] admission that he is not presently a shareholder normally ends our inquiry."). However, in their opposition to defendants' motion to dismiss, plaintiffs also invoke a species of equitable standing based on the stockholders' unique role as representative of the corporation in a derivative suit.[13] **ECF No. 92**. Specifically, plaintiffs request that the Court refrain from dismissing the case for lack of subject matter jurisdiction and substitute the putative intervenors to cure any standing deficiencies. *Id.* In support of this proposition, plaintiffs emphasize a Delaware state case where plaintiffs lost standing by failing to comply with the continuous ownership rule, but where intervention or substitution of plaintiffs was allowed. *Id.* (citing *In re MAXXAM, Inc./Federated Development Shareholders Litig.*, 698 A.2d 949 (Del.Ch. 1996). However, the standing inquiries undertaken by a state court and a federal court differ in a crucial way: state courts do not have constitutional limitations on their jurisdiction. *See LaPierre v. DiBartolo*, No. 12-1996, 2013 WL 656313, at *3 (S.D.N.Y. Feb. 21, 2013) (citing *City of*

---

[12] Standing should be assessed on a plaintiff-by-plaintiff and claim-by-claim basis. *Katz*, 672 F.3d at 67. Here, however, the continuous ownership rule governs all plaintiffs' remaining claims over which the Court exercises primary jurisdiction, as well as plaintiffs' derivative claims under Commonwealth law, brought pursuant to the Court's supplemental jurisdiction. Likewise, it is uncontested that all plaintiffs sold all of their shares in the Plans. Thus, the Court's analysis herein applies equally to each plaintiff and each claim.

[13] The Court is skeptical that plaintiffs' pleas for equitable standing remain in light of the Court's determination that plaintiffs also lack Article III standing due to their sale of all shares in the Plans. *See Arar v. Ashcroft*, 532 F.3d 157, 170 (2d Cir. 2008) (noting that federal district courts are courts of limited jurisdiction); *W.F. Huff Asset Mgt. Co., LLC v. Deloitte & Touche* LLP, 549 F.3d 100, 106 (2d Cir. 2008) (noting that statutory standing is separate from constitutional standing and even Congress cannot abrogate the latter); *Viqueira v. FirstBank*, 140 F.3d 12, 16 (1st Cir. 1998) (noting that federal courts can only hear cases that fall within Article III or an explicit grant of jurisdiction by Congress thereunder). However, because the Court based its dismissal on both lack of constitutional standing and, in the alternative, prudential standing, the Court addresses the request for equitable standing below.

*Los Angeles v. Lyons*, 461 U.S. 95, 113 (1983)) ("State courts may afford litigants standing to appear where federal courts would not, but the fact that a state court would permit a plaintiff to assert an action has no bearing on the plaintiff's standing under Article III."); *Kolancian v. Snowden*, 532 F. Supp. 2d 260, 261 n. 2 (D.Mass. 2008) ("As a court of limited jurisdiction, a district court has a duty to pay utmost attention to its jurisdictional authority."). Thus, even where the Delaware state courts find that jurisdiction is lacking, they do not have to dismiss for failure to meet Article III's cases and controversies requirement, unlike their federal counterparts.

Plaintiffs also cite two federal cases, *Pikor v. Cinerama Prod. Corp.*, 25 F.R.D. 92 (S.D.N.Y. 1960), and *Lewis v. Knutson*, 699 F.2d 230 (5th Cir. 1983), in support of their request that putative intervenors' motion be granted despite their own lack of standing. **ECF No. 92**. In *Pikor*, the first of these decades-old decisions, the court indicated that intervention could be allowed where the original derivative plaintiffs lost standing. 25 F.R.D. at 96. However, this case was decided well before the Supreme Court first noted the constitutional ramifications of the continuous ownership rule in *Gollust*, 501 U.S. at 125. While a court may choose to bypass prudential standing requirements in order to address the merits of a case, a court may never do the same for questions of constitutional standing. *Gianfresco*, 712 F.3d at 638.

In *Lewis*, having determined that the plaintiff lost standing by failing to meet the continuous ownership requirement, the Fifth Circuit approved of the district court's use of notice to remaining shareholders to allow for intervention in the face of dismissal. 699 F.2d at 240. First, the Court notes that *Lewis*, like *Pikor*, was decided well before *Gollust* and the subsequent line of cases ruling that the continuous ownership requirement bears constitutional implications. Moreover, the notice given in *Lewis* was provided pursuant to an old version of Federal Rule 23.1, whose language was read to mandate notice to all shareholders of any dismissal imminent in a shareholder derivative action. *See* Fed.R.Civ. P. 23.1 (1966)*; Schilling v. Belcher*, 582 F.2d 995, 999 n.1 (5th Cir. 1978) (outlining the history of the rule at that time). However, Federal Rule 23.1 was subsequently amended to mandate notice only of proposed

settlements, voluntary dismissals or compromises.[14]  *See* Fed.R.Civ. P. (2012).  Thus, the underpinnings of the notice given in *Lewis* are no longer applicable.  Based upon these crucial distinctions between the federal cases cited by plaintiffs and the case at bar, the Court finds that plaintiffs have not met their burden of establishing equitable standing. *See Kokkonen v. Guardian Life Ins. Company of America*, 511 U.S. 375, 377 (1994) (recognizing that the presumption is that the court lacks jurisdiction and that "the burden of establishing the contrary rests upon the party asserting jurisdiction.").[15] Even if the Court had only dismissed based on plaintiffs' lack of prudential standing, rather than on both prudential and constitutional standing grounds, it would not grant plaintiffs' request for equitable standing here due to the time elapsed between plaintiffs' sale of their shares in the Funds and the request for intervention, the distinguishable nature of the cases cited by defendant and the limited nature of the Court's jurisdiction.

As plaintiffs lost standing when they sold their shares in the Plans in 2012, thereby depriving the Court of its jurisdiction, the Court's involvement in the case must cease. *See Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002) (affirming disallowance of a motion to substitute a real party in interest where plaintiff had no standing because subject matter jurisdiction is a prerequisite to analysis for substitution even where the new plaintiff was then barred by the statute of limitations); *Pallazola v. Rucker*, 797 F.2d 1116, 1127 (1st Cir. 1986) ("In the absence of subject matter jurisdiction, the court was required immediately to dismiss the action – on jurisdictional grounds"); *Gordon v. United States*, No. 11-2852, 2012 WL 1988711, at *2 (M.D.Fla. June 4, 2012) ("Simply put, the dismissal of plaintiffs divests the Court of subject

---

[14] This is consistent with the policy that shareholders acting as representative plaintiffs in derivative suits should truly represent the interests of the corporation itself, in turn made up of the entire shareholder pool.

[15] The Court is also reluctant to extend its powers of equity to a case where counsel not only pursued an appeal after both this Court and the First Circuit Court of Appeals lost jurisdiction, but also failed to discover that their clients had sold their shares and locate suitable replacement plaintiffs due to an utter failure to communicate over the course of several months.  As noted above, this scenario strongly indicates the existence of a lawyer-driven lawsuit.

matter jurisdiction and divests plaintiffs of the ability to request amendment of the complaint to add additional plaintiffs."); *Zangara v. Travelers Indemnity Company of America*, No. 05-731, 2006 WL 825231, at *3 (N.D. Ohio March 30, 2006) (stating that because the court lacked subject matter jurisdiction, it was without power to issue any further orders). Accordingly, the Court **GRANTS** defendants' motion to dismiss (**ECF No. 81**) and orders that judgment be entered **DISMISSING** the Complaint **WITHOUT PREJUDICE**. Consequently, putative intervenors' motion (**ECF No. 80**) is **MOOT**.

### III. Conclusion

For the reasons set forth above, defendants' Motion to Dismiss for lack of subject matter jurisdiction (**ECF No. 81**) is **GRANTED**; the Motion to Intervene (**ECF No. 80**) is **MOOT**. Judgment shall be entered **DISMISSING** the case **WITHOUT PREJUDICE**.

**IT SO ORDERED.**

In San Juan, Puerto Rico, on this 9th day of July, 2013.

**S/AIDA M. DELGADO-COLON**
**Chief United States District Judge**